HYMAN FEILER *vs.* Z. ZAWATSKY & SONS.

JULY 8, 1927.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

*(1)   Landlord and Tenant.   Heating Premises.   Damages.*

Where lessor agreed to heat leased premises for lessee, and on complaint of lessee of lack of heat, gave lessee privilege of installing a heater without expense to lessee or of regulating the furnace in cellar at a slight incon-

venience or cost to lessee all of which lessee refused, lessee was not justified in permitting his business to be ruined and looking to lessor for compensation for his loss. It was the duty of lessee to adopt reasonable measures to minimize his loss.

*(2)   Landlord and Tenant.   Heating Premises.   Damages.*

For breach of a covenant to heat leased premises the measure of damages is the difference in value of the premises heated as stipulated in the lease and the value as they were in fact heated; not, however, exceeding the reasonable cost of supplying the heat. No evidence relative to profit and loss or the value of the business lost is admissible.

COVENANT. Heard on exceptions of defendant and sustained.

RATHBUN, J. This is an action in covenant brought by a tenant against his landlord to recover damages for an alleged breach of covenant to supply heat in accordance with the provisions of a lease. The trial in the Superior Court resulted in a verdict for the plaintiff for $2,366.67 and the case is before us on the defendants' exceptions as follows: (1) to the admission and exclusion of testimony; (2) to instructions to the jury; (3) to the failure to instruct the jury as requested; (4) to the denial of their motion to direct a verdict in their favor and (5) to the denial of their motion for a new trial.

The defendants leased to the plaintiff and his partner, Leo Katz, for a term of three years, commencing March 1, 1923, a store to be used for a restaurant. The lease contained the following clause: "The Lessors agree to reasonably heat the said premises during the cold season of the year, except when interfered with by the heating apparatus becoming out of order or repair, or by conditions beyond the control of the Lessors."

In the preliminary discussions leading up to the execution of the lease nothing was said as to the number of hours per day the restaurant would be kept open for business. The plaintiff and his partner conducted a restaurant on the demised premises from the time of the commencement of the lease until April 15, 1924, on which date the plaintiff purchased his partner's interest in the business and acquired

full rights and assumed all obligations under the lease. Thereafter the plaintiff occupied the store and continued the business until January 18, 1925, on which date he vacated and opened a restaurant in another section of the city. Until the dissolution of the partnership, the defendants, during the time when heat was necessary, supplied adequate heat from 7 or 7:30 a. m. until 7:30 or 8:30 p. m. During the continuance of the partnership and thereafter until the store was vacated the restaurant was opened regularly at 4:30 a. m. and closed at midnight. There was some testimony, which was rather indefinite, that while the restaurant was conducted as a partnership complaints were made that the heat was insufficient in the early morning and late at night. After the dissolution of the partnership heat was supplied during substantially the same hours as before. From October or November, 1924, to January 3, 1925, the plaintiff complained to the defendants at different times that they were not supplying heat as provided for in the lease. On the latter date, the plaintiff gave the defendants a notice in writing in which he stated that he had lost much of his trade by reason of the lack of heat; that he would no longer be bound by the terms of the lease and that his holding thereafter would be as a tenant from month to month. On January 12, 1925, the plaintiff, in writing, notified the defendants that he would quit the premises at the end of the current month. The writing contained the statement that the notice was given for the purpose of terminating his monthly tenancy.

When the plaintiff complained of not having heat in the early morning and late at night the defendants gave him permission to operate the furnace and offered him a key to the cellar. One of the other tenants had at times regulated the furnace when he needed heat late at night. The plaintiff admitted that he refused to go to the cellar to regulate the heat and gave as his reasons that he was not familiar with the operation of an oil burning heater and that he did not care to trouble himself with the matter. The plaintiff

requested the defendants to install a gas heater in the restaurant. The defendants offered to pay for the cost of installing such a heater and to credit the plaintiff with the cost of gas consumed in producing extra heat. The plaintiff was of the opinion that a gas heater would have satisfactorily heated the restaurant but refused to have the heater installed because the defendants told him not to run the gas pipe a long distance through another part of the building to the defendants' gas meter but to connect with his own gas line which was nearer at hand and charge them with the expense.

The plaintiff contends that his business was ruined because of lack of heat and seeks to hold the defendants in damages for the value of his business.

(1) He had the privilege of having as much heat as he desired either by installing a heater without expense to himself or by regulating the furnace in the cellar at a slight inconvenience or cost. He refused both.—The jury found specially that he refused to regulate the furnace.—Under such circumstances he was not justified in permitting his business to be ruined, if in fact it was, and looking to the defendants for compensation for his loss. The jury evidently found that he had a profitable business which was lost for the want of heat, but his conduct raises a strong suspicion that his complaints relative to heat were for the purpose of laying a foundation for avoiding a lease which was useless to him because he was unable, regardless of the question of heat, to do business there at a profit. However, assuming that the plaintiff did suffer loss by reason of the lack of heat, which the defendants covenanted to supply, it was his duty to adopt reasonable measures to minimize his loss. This, we think he has failed to do. A tenant is, of course, required to do no more than is reasonable. In many instances the building is so constructed or the demised premises are so situated that no reasonable efforts on the part of the tenant would supply him with heat. On the evidence presented the jury were not warranted in finding

that the plaintiff, by reasonable effort, could not have secured as much heat as his business required. The plaintiff has suggested nothing to excuse his conduct except inconvenience which would have been slight compared with a loss of business as great as he contends. Even the expense could have been charged to the landlords and they offered to pay the expenses of heating by a method suggested by the plaintiff. Sedgwick on Damages, Vol. 3, Sec. 995, states the rule in such cases as follows: "For breach of a covenant to heat the leased premises the measure of damages is the difference in value of the premises heated as stipulated (2) in the lease, and the value as they were in fact heated; not however, exceeding the reasonable cost of supplying the heat. Such an agreement is subject to the rule of avoidable consequences, and the lessee can recover no consequential damages if he might have heated the premises himself." See also *Purcell* v. *Warburton*, 70 Wash. 129; *McCormick* v. *Stowell*, 138 Mass. 431; *Borchardt* v. *Parker*, 108 N. Y. Supp. 585; L. R. A. 1918, C. 907.

In certain cases it is a question of fact for a jury whether the tenant's conduct in failing to supply himself with heat was reasonable; but when he has one adequate heating plant with a supply of fuel at his disposal, and the offer of another, no question of reasonable conduct is presented.

For the purpose of proving the value of the business lost the plaintiff was permitted over the defendants' objection to produce certain books purporting to show the unitemized daily total of receipts and disbursements. Applying the rule above enunciated it follows that no evidence relative to profit and loss or the value of the business lost was admissible. The exceptions to the admission of such evidence are sustained.

The defendants contended that the trial justice should have granted their motion to direct a verdict in their favor. The lease does not definitely specify what the agreement was relative to the hours during which heat would be furnished. The defendants contend that the plaintiff for more than a

year accepted without complaint the heat which the defendants supplied and that, as the parties have thus placed their own construction upon the language of the lease, the court should now adopt the same construction, but the plaintiff testified that complaint was made during the first year, and one of the defendants testified that he expected to supply heat whenever it was needed by the plaintiff.   It is a fact that the plaintiff produced no proof to show what his damage was according to the rule which we have above outlined.   On the other hand, as the plaintiff did submit testimony tending to show he was damaged by the defendants' breach of their covenant we think the case should be submitted to another jury.

The defendants' exception to the refusal to direct a verdict in their favor is overruled.   The exception to the denial of their motion for a new trial is sustained and the case is remitted to the Superior Court for a new trial.

*Rosenfeld & Hagan,* for plaintiff.

*Fitzgerald & Higgins, Walter V. Moriarty,* for defendant.